The Chief Justice
delivered the opinion of the Court.
This is a writ of error, to reverse a judgment of the Fayette circuit court, against John Montee, for setting up, and keeping a gaming table, contrary to the statute, on which money was won and lost.
Four questions are presented, by the assignment of errors.
111 U1UICUU for setting and keepii gaming tai or bank, it not necesss to state ho-much mom was lost, o: who lost it.
1st. Is the indictment valid?
2d. Did the court err, in restricting Montee’s per/emptory challenges,to the number three?-
3d. Had the court a right to instruct the jury, as to the law of the case?
4th. Was Montee entitled to a new trial, because the court, on a previous day of the term, and in another case, expressed the opinion, that a person convicted under the gaming act, might be discharged by taking the oath of an insolvent debtor.
There are two counts in the indictment. The first charges, that, “John Montee, late of the county of Fayette,on the 7th day of June, in the year 1828, and in the county, and,circuit aforesaid, did set up, and keep a gaming table, at which, the game of chance, commonly called “Chuck-a-luek” was played for money, and money, was then and there won and lost.”
The 2d count, charges, that “John Montee, on the day and year aforesaid, and in the county and circuit aforesaid, did keep a bank, and induce and permit divers persons, to be^money against the said bank, and money was then and there lost and won, contrary to thpform of the statute, &c.”
The language of the two counts, is not as explícit-as it might have been, nor as copious a§ that found in many of the old forms for indictments, and it may be obnoxious to some criticism. But it clearly charges a breach of the statuteof gaming, with all the characteristic circumstances of time and place. It defines and identifies the offence, with sufficient precision to prevent surprise or injustice.
It was not necessary to state how much m®ney was won or lost, nor who won or lost money. To require such specification, would be unreasonable. It would frustrate the wholesome policy of the statute, and virtually abolish the law. It would be requiring an impossibility, without any motive or reason. The object of an indictment, is to notify the accused, of the specific charge made against him, and to shew the court, that the offence charged, is indictable. The phraseology should therefore be so explicit, and unam *134 biguous, as tobe intelligible to the accused and'to-the court, and prevent another prosecution, for the same offence in the event of a conviction or acquittal on the merits.
Hor is it necessary, in such indictment, to designate name of game. For, courts do not generally Know tech-nics or appel-latives of gamblers.
‘Game of cfiance, on a bank, or on a gaming table’ is sufficient description to fmport violation of statute.
The law, for obvious reasons, exacts more strictness, ■and precision in indictments, than in declarations.
In some cases, there are certain technical terms or phrases, which will not be dispensed with. And it is not always sufficient to charge an offence in the language of the law, which defines it. For instance*a gross charge of “perjury” would be wholly insufficient, in an indictment. Such a general charge would not identify the offence, nor notify the accused of the particular facts constituting the crime, against which he was called to defend himself, nor enable the court to decide, that any perjury had been committed.
But each count in this indictment, clearly charges facts, which, if true, constitute the offence, defined in the act of assembly, of 1823, against gaming; and each contains such a specification of the accompanying circumstances, as to identify the offence, and' prevent any embarrassment, or delusion.
I,t was not necessary, (as is dofte in the first count) to designate the name of the game. The courts do. not judicially know the technics, or the appellatives of gamblers. Neither this court, nor any other, knows what kind of a game ‘•‘■Chuck-a-luckn is, or-whether it is a game of chance, prohibited by law. Tf it be, as we are to presume it is, an unlawful game, it may be called and known, by various names, and by names, by which other games are denominated. It is evident, therefore, that the name “Chucfc-a-luck,” does not,per se, “identify to the accused, the court or th«. worldj any one game 6f chance,cr necessarily import, that what is thus characterized, was a game of chance.”
“A game of chance, on a bank, or on a gaming table,” is description sufficient, to import a direct and specific charge, of a violation of the statute. The insertion of the name, by which the game is generally known, might contribute to its.identification; but it-is not indispensable, and without- other allegations, would not shew that it was an unlawful game of-' *135 chance. For example, to charge a man with playing at Chuck-a-1 nek, would be vague and indefinite.
‘Game of chance,’ noi' sufficient description ; for it may have been on cards' or dice, and not on bank or table. Species of game must designated.
The time and place are set forth in the indictment, with sufficient certainty. Then and there, mean the time and place mentioned, on the antecedent part of the count.
The second count, does not state th.e kind of bank, which was set up, nor the kind of game, which was played on it, nor who bet on the bank. But no rational mind, can hear the charge read, from either count, without understanding, that an unlawful gaming table, or an unlawful bank for betting, was set up by«Montee, at a specified place, and on a designated day, and that, at that place, and on that day, money was lost and won, on a game of chance, then andttjere unlawfully played, contrary to the policy, and the letter of the statute. If such game of chance, were played on atable or bank setup by Montee, and money lost and won upon it, it is not material, of what the table or bank was constructed, what denominated, or who contributed to the game, by betting. It must be an offence against the statute, and is sufficiently defined for any reasonable, just, or .legal purpose;
It is a game of chance, on a gaming table or hank, and is as unambiguous and specific, as would be “a game of chance, with cards, or with dice.” In the latter case, it would not be necessary to give name to the game, nor to give description of the-cards, or of the dice.
“A game of chance,” would not be sufficiently descriptive, because it would not appear, whether it was a game, with dice or cards, or on a bank, or gaming table. The specific game should be stated. This is certainly, done, by the expression, “a game of chance on a bank,” or “with cards.” The bank or the cards identifies the species. A more minute description of the game, so as to identify the, individual game, could not be necessary. For if it were required, it would be impossible to know, when to slop. Must a particular description be given of the cards, or of the bank, &c? If so, who can tell, what.shaU complete 'the characteristic description?
*136 Generally, the facts which constitute the offence, must be stated. But no more certainty is required, in such statement of facts, than is reasonable, than such as they are conveniently susceptible of. To charge a woman with being a common scold, or a man with being a barrator, or with being the keeper of a dis* orderly house, is sufficiently certain. Because the charge is easily understood, and could not be well described more minutely. To charge a man" with obtaining money, by “false pretences,” would not be sufficient. According to the principle which has been stated, the facts ought to appear, and it should be averred, in what the falsehood consisted.
In this indictment, all the essential fact's are set forth. Facts are stated, which constitute an offence., within the letter of the statute, and according to the authority, and form laid down by Chitty. See 2d, Chitty’s Criminal Law, 440-1-2, &c.
If this indictment be not good, every upright citi®en, may feel the force of the following declaration of Lord Hale, and apply it, even to her own age and country. “The strictness required in the indictments, is grown to be a blemish, and inconvenience in the law, and the administration thereof, that more offenders escape, by the over easy ear, given to exceptions to indictments, than by the manifestation of their innocence, and the grossest crimes, have gone unpunished, by reason of these unseemly niceities.”
In this country, where the Jaws are so jiberal and benign, and are administered with so much mildness, courts should lean against the technicalities, and nice-ities of ancient times, when more rigor and ignorance prevailed. We would say with Lord Mansfield “that tenderness ought always to prevail,'in criminal cases, so far at least, as to take care, that a man may not suffer otherwise, than by due course of law,” but “that tenderness does not require such a construction of words, (perhaps not absolutely clear and express) as would tend to render the.law nugatory, and ineffectual, and destroy-, or evade the very end of it, nor does it require of us, that we should give into such nice, strained and critical objections as are contrary to its true meaning and spirit.”
cgmmou law, prisoner a11 prose-{^j right' to chal-lege 35jm-ors peremptorihi. g/right'Vf peremptory challenge was rednoed to 20 But, in prosecutions for misdemeanors was no peremptory challenge in England, when colloni&l charter was granted- to Virginia by James I.
*137 The rule laid down in Chitty, is the safe and just One. “If the sense be clear, nice objections ought not to be regarded.” I. Chitty’s Criminal Law, (173.)
The indictment in this/case, tested by the foregoing reasoning and principles, will be found to be good and valid. See Lampton vs. The Commonwealth, IV. Bibb, 261.
But if it were otherwise, it is cured by the verdict.
By the 7th section, of the act of 1805, (I. Digest, 416,) it is enacted, that “no judgment in a prosecution founded on an indictment or information, shall be arrested or reversed, after a verdict thereon, for any defect in form, in such indictment, information or verdict, provided such indictment- or information, shall substantially -contain a specific charge of an offence, punishable by law, and provided the verdict shall substantially comport in law, with such charge, or the material parts thereof.”
This provision cannot have a very extensive operation. But if it have any effect, it must apply to such a case as this. The pbjections to this indictment, are nice and formal. It contains substantially, if no more, “a specific charge of an offence, punishable bylaw.”
There is nothing available therefore, in the first error.
The second error, presents a question, which is new, and not free from difficulty.
By the common law, the prisoner had a right, in all prosecutions for felony, to challenge thirty-five jurors, peremptorily; but by the statute, 22d. H. VIII. C. S. 7. made perpetual, by that of 32, H. VIII. C. 3, this right of challenge, was restricted to twenty, in all felonies, except high treason; and by the 33d. H. VIII. C. 23. S. 3, the same restrictions applied to high treason. But the statute of :J„ and II. Ph. and M. C. 10, revived the common law as to challenges, in cases for treason, and consequently, in those cases, extended the challenge, to thirty-five.
*138 But the right of peremptory challenge, in prosecutions'for misdemeanors did not exist in England, when the colonial charter was granted to Virginia, by James I.
• By the 19th section of an act of the legislature of this-state, (December 17, 1796) entitled, “an act to .reduce into one, the several acts, concerning the examination, and trial of criminals, grand and petit juries, veniries, and for other purposes,” it is enacted, that “no person arraigned for treason, shall be adr mitted to a peremptory challenge, above the number of twenty-four; nor shall any person, arraigned for murder or felony, be admitted to a peremptory challenge, above the number of twenty.” I. Digest 408.
By an act on the same subject,, (22d December 1798) it is enacted, that, “the same right of peremptory challenge, which now exists, in cases that are capital, (except treason) is hereby extended to all criminal cases whatsoever. The ..provisions of this act, shall extend tp all courts, within this commonwealth, having jurisdiction of such cases, except the courts of quarter sessions.”
The court of oyer and teririiner, had been abolished, in 1795, and at the dates of the foregoing enactments, the criminal jurisdiction of the state, was vested in the quarter sessions, and district courts.
By the 10th section of the act, establishing district courts, it is enacted, that they “shall have full power, to hear and determine all'treasons, felonies, and other crimes and misdemeanors, committed within their districts, except breaches of the penal laws.” This act, passed the 19th of December, 1795; I. Littell’s Laws, 299.
By the 3d section of an act, approved 21st of December, 1795, to amend an “act, esláblishing county courts, courts of quarter sessions, and a court of oyer and terminer,” it is enacted, “that the courts of quarter sessions, shall have concurrent jurisdiction with the district courts, in all matters or things, whatsoever, except in the trial of criminals
The same provision is re-enacted, in the 2d section . of an act, to reduce “into one, the several acts es *139 tablishing courts of quarter sessions, and directing the proceedings therein,” approved, December 19, 1796; I. Litteil’s Laws, 502. And-the 3d section this last act, contains, among other things, the following provision. “The grand, juries, which may he summoned to attend the court of quarter sessions, shall have power, and authority, to inquire into all breachesof the penal laws, whether the penalty by such law inflicted, exceed the sum of £5, or one thousand pounds of tobacco, or not.”
The 10th section of an ac4. approved, 17th Dec. 1796, to amend the act, establishing district courts^ provides, that, “the-district courts to be held as aforesaid, shall have full power, to hear , and determine all treasons, murders, felonies, and. other crimes and misdemeanors-, committed within-their district, that shall be brought before them, by an,y rules or regulations directed by law,” I. Litteil’s Laws', 478.
The only difference between, the 10th section of the act of 1795, .and the 10th section of the act of' 1796, just quoted, is that the former excludes from the jurisdiction of the district courts penal cases expressly, the latter says nothing positively about, them.
The 6th section of the act, “establishing county courts, courts of-quarter-sessions,.and a court of oyer and terminer, ^approved, June 28,- 1-792, .defines the jurisdiction of the courts of quarter sessions, as- follows: “they shall he-conservators of the peace, and are hereby declared, to have- power, authority, and jurisdiction, to hear-and determine all causes whatsoever, at the common law,-or in chancery, within their respective counties, except such criminal, cases, where the judgment, upon conviction, shall be for the loss of life or member, and except, also, all causes of less value than £5, or one thousand pounds of tobacco.” I; Litt’s. Laws, 90-
The 14th section,-of the same act; declares, that 4tthe court of oyer and terminer, shall have full power to hear and determine all treasons, murders, felonies, and other crifties and misdemeanors, .which-shall' be before them.’?
The act of 1802, which abolished the district and quarter sessions courts, vested in the circuit court the *140 civil and criminal jurisdiction, which belonged to each of the abrogated tribunals. And an act of 20th Dec» 1802, the same day, on which the act, establishing the circuit courts, was approved, declares, “that all crimes, which may be made punishable by confinement in the penitentiary, except gaming, shall, both as to these, and all other intents and purposes, be regarded as felonies.”
All offences punishable by confinement in penitentiary, are felenies.
The penitentiary had been established, by an act of February 10th, 1798. And keeping certain gam-ingtables, was punishable by confinement in the penitentiary, by nn actof 10th Feh. 1798, for reforming the penal laws. But by the act of 29th December, 1823, a pecuniary penalty of $500, was substituted. This fine may be enforced by imprisonment. But the imprisonment, is no part of the punishment for the ofFeuce.
We have endeavored to exhibit, in a condensed form, as much of the common and statute law, as can contribute to the solution of the vexed question, now-under consideratiou. The order is not precisely cro-nológica]. But it is intelligible, and will lead to no confusion. Nothing material to the question, has ■been pretermitted.
It will be felt and acknowledged at once, that it is not easy to determine with a precision, perfectly satisfactory, and such as is desirable, in all legal questions, and more especially, in penal or criminal cases. Whether the right to a peremptory challenge of at least twenty, exists in all prosecutions, to be tried by juries, and if it do not, what shall be the classification of cases, in which it does not exist. The phraseology oí the acts of assembly, which have been quoted, is somewhat loose and indeterminated; and hence it will be difficult, and is somewhat hazardous, to attempt to give any construction to them all, ’■•in pari materia” which will effectuate the intentions of their authors.
The foregoing synopsis, leaves no room for doubt, in prosecutions for offences, made punishable by confinement in the penitentiary. They are all felonies; and in all felonies, the right is expressly granted, by the act of 1796, to challenge at least twenty of the venire.
*141 But the offence charged in this case, is nota felony* It is a misdemeanor; the punishment for which is a tine.
Before the establishment of the district court, thd" courts of quarter sessions, had jurisdiction, concurrently, with the court of oyer and terminer, of all offences, the punishment of which, did not extend to life or limb.
By the act of 1795, the district courts,^were vested with jurisdiction, over all offences, except such as.. were punishable by pecuniary penalty.
The act of 1796, did not, (in our opinion) extend, or materially alter that jurisdiction. The expressions, “and other crimes and misdemeanors, committed within their district, that shall be brought before them, by any rules or regulations, directed by law,” ought not to be construed to include penal cases, which had been before excepted: “any rules or regulations, directed by law,” must have been intended to apply to rules and regulations, regulating the jurisdiction, before the date of the act of 1796: and consequently, according to this interpretation, no power was given to the district courts, by the act of 1796, which it had not derived, from the act of 1795. And therefore, the act of 1796, did not give to them, cognizance of penal cases. This seems to be the proper construction of these acts, although-in practice, we believe, that a different construction was put upon them.
The jurisdiction of the courts of quarter sessions, was concurrent with that of the district courts, in all cases, “except in the trial of criminals” This does not import, that the quarter sessions courts, had no “criminal” jurisdiction; but only, that so far as they had any such jurisdiction, it was exclusive, and not concurrent with that of the district courts. ' The jurisdiction of the courts of quarter sessions, over penal cases, wras undeniable: and by the practical contemporaneous construction they exercised jurisdiction (as we have reason to believe) concurrently with the district courts, in all prosecutions for offences, the punishment of which, did not extend to life or limb. We are inclined however, to the opinion", that a compari *142 son of the various aóts, on this subject, must result in the legal opinion, that so far as either court had jurisdiction, in criminal, as contradistinguished from civil cases, it was exclusive. We cannot easily give effect, to all the provisions of these acts, by any other hypothesis..
Criminal cases, are generally, all casesrwhich are not civil. There may be three classifications, to-wit;criminal, penal, and civil cases.
But the expression criminal cases, usually^ means all such cases, as are not civil. And- heqce, in this sense, all prosecutions hy indicment, may be denominated criminal cases.
The right of peremptory challenge, as far as twenty, was extended by the act of 1798, “to all criminal oases whatsoever” except such as should be tried in the quarter sessions courts.- This shews, 1st. That the prosecutions of which the courts of quarter sessions had cognizance, were“criminalcases.’’ And, 2d. That the right of peremptory challenge of twenty, should not extend to such cases.
It has been supposed by many persons, that the only reason, why the right of peremptory challenge' was not-extended to the cases tried in the courts of quarter sessions, was, that any errors, which might be committed in these courts, might be corrected by a writ of error to this court. By the act of 1796, writs of error are authorized in all cases “except in those cases which may be brought before, and determined by the district courts, under the criminal! jurisdiction of the said court.” II. .Dig. 382.
As the circuit courts, are as competent as the district courts were, and now have, all the criminal jurisdiction, which belonged to both the quarter sessions, and district courts,-if we should decide, that writs of error, in criminal cases, tried in the district courts, were prohibited by the legislature, only, because those courts-were deemed sufficiently learned, to secure a fair and correct trial, which therefore, it would not be necessary to control by revision, and not because the class of cases to be tried in them* was suchas to render a revision of them., by the appel *143 late eourt, inexpedient, then it would result, almost necessarily, that writs of error should not now be tolerated in any criminal case, which shall have tried in a circuit court. But it has been decided, that •there are cases, in the nature of criminal prosecutions, in the circuit courts, (penal cases foe instance,) to reverse which, writs of error, may be prosecuted.
If then, the district and quarter sessions courts; had any concurrent criminal jurisdiction, a vexatious •question, would here arise. It is this: can a writ of error be prosecuted, to reverse a judgment of the circuit court, in a criminal case, in which there was a concurrence ofjurisdiction by the district and quarter sessions courts? . Who could know, in which o.f these courts, the case would have been .tried, if they had not been abolished. Had it been tried in a district court, no writ of error could have issued. If it had been tried, in a court of quarter sessions, a writ of error might have issued. And in the one case, there might have been a peremptory challenge, as far as the number, twenty, but in the other, there could have been no such challenge.
These perplexing difficulties, would tend in some degree, to fortify the construction, which we have suggested, that is, that there was no concurrence of jurisdiction, by the district and quarter sessions courts in criminal cases, whatever may have been thought, or admitted in.practice, to the contrary.
This construction, not only seems to be required by a redbonable interpretation of the various provisions, in the acts of assembly, but will be consistent and convenient. By adopting it, all difficulty in the question of challenge, or of a writ of error, at once vanishes. By substituting any other, the courts will be involved in doubts, and entangled in perplexing difficulties.
If the quarter sessions, had jurisdiction, only of such cases called criminal, as were punishable by the infliction of pecuniary penalties, and if the district courts, had no jurisdiction of such cases, then it would be clear, that as the right of peremptorily challenging twenty, w.as not extended to any case, in the quar- *144 tér sessions, but was allowed in all cases in the dis~ Wet courts, it could not be indulged in all cases of and might be exercised, in all other cases. It would result also, as a manifest consequence, that the right to prosecute a writ of error to this court, existed in, and was restricted to “penal cases.’’ These deductions would be authorized, not only by the letter, but by the presumed reason of the statutes, which would have been granted.
Right to writ Of error, and also right to peremptory challenge of 20 jurors, cannot co-ex-V*-.
The reason for not allowing a challenge of twenty, in “penal cases,” may be twofold. 1st. Because such cases, although technically criminal, (because they are violations of the public law, and areprosecuted by indictnfent,) are, in substance and effect, purely civil, 2d. Because writs of'error being allowed in them, any error which might occur inthe trial of them, could be corrected by this court, and therefore, the necessity for allowing a peremptory challenge, of a greater number, than may be challenged, in cases strictly •civil, did not exist.
The reasons for allowing writs of error, in such cases, maybe; 1st. Because, being quad civil, they should, as to their ultimate trial, be placed on the footing of ordinary civil cases. 2d. Because the peremptory challenge, allowed in other criminal cases, was not tolerated in such as these.
A part of this explanation, is founded apparently, on a “petitioprincipal For examp!e:itisassumed,that one reason, why the challenge of twenty, does not apply to “penal cases,” is, because writs tí error, may be prosecuted in such cases; and then, one of the reasons assigned, for allowing the writ of error, in these cases is, because the right of challenging twenty, does not exist in them. But this is the" fault, more of the subject, than of the, reasoning.
It is evident, that the right to a peremptory challenge of twenty, and the right to a writ of error, cannot co-exist. When one may be exercised, the other is denied, and avice versa;” and therefore, the allowance of the one, is a conclusive reason for the interdiction of the other.
The reason for not tolerating writs of error, in criminal cases, punishable by corporal infliction, *145 mayjbe, because such a proceeding, would,' in such cases, be not only unusual, but inconvenient, oppres-8ive, and in some degree, subversive of the exigen-des, and end of inflicting corporal punishment.
^S^ofper-challenge of ¡stTnVenaí cases,’but is allowed in all nalcasss™1"
—---*
It would seem therefore, that the most safe and consistent conclusion, is, that the right of peremptorily challenging twenty, does not exist, in “penal cases,” but is allowed, in all other crimihal cases, and that the right to prosecute a writ of error, is given in a penal, but in no other criminal case.'
Bat if it be admitted, that the district and quarter sessions courts, had concurrent jurisdiction, in all criminal cases, the punishment of which, did not extend to life or limb, confusion and doubt, instantly arise. The right to challenge, and to prosecute a writ of error, would depend, not on the nature of the case, but on the court, in which it- should happen to be tried: in other words, their important rights, would depend, not on any fixed principle or rule, but on accident; for if ihere was a concurrence of jurisdiction, whether a trial should be had in the one, or the other court, would be fortuitous. Another difficulty would present itself. On the establishment of the circuit courts, and the transference to them, of all the criminal jurisdiction of the superseded courts, the right to a peremptory challenge of twenty, must necessarily apply, either to ail cases in which the abolished courts, had concurrent jurisdiction, or to none of them; and11parí rations" the right to a writ of error, must exist in all, or in none.
It could not be known, whether a case of this class, would have been tried in a district, or in a quarter sessions court. If it had been tried in one, the right of challenging twenty resulted; if it had been tried in the other, the right was denied; so, if it had been tried in one, there could have been no writ of error, but if it had been tried in the other, error might have been prosecuted.
Wherefore, the foregoing conclusion, is inevitable.
But, as before suggested, it has been decided, more than once, by this court, that a writ of error may be, in prosecutions for penalties.
*146 If therefore, the district and quarter sessions cou'rts. bad any concurrent jurisdiction,in criminal cases, two propositions must be maintained.
1st. That the concurrence of jurisdiction, did not extend to penal cases, and that they were cognizable by the courts of quarter sessions alone; and consequently, that the act of Í796, regulating the jurisdiction of the district qoufts, should be interpreted, as we have construed it, not to have been intended, as a repeal of the act, of 1795,-which excepted “penal cases,” from the jurisdiction of the district courts, and vested them exclusively in the quarter sessions.
2d. That the right of challenge, and to a writ of error, in the criminal cases-, of which the district and quarter sessions, had concurrent jurisdiction, was controlled in the circuit courts, by the rule which regulated it, in the district courts: and consequently, that the right to challenge twenty, peremptorily exists in all criminal cases, except such as-are “penal,” and that the right lo a writ of error, is applicable to “pe-nal cases,” and to no others.
These propositions, if maintainable, leave this vex* atious quéstion, precisely where we had placed it. The decisions by this court, as to its jurisdiction in penal cases,' render it necessary to maintain both propositions, if the district and quarter sessions courts had any concurrent jurisdiction in criminal cases; for it has never been decided, nor bélieved, that this court 'could take cognizance of perjury, and of other crimes, of which the quarter sessions had jurisdiction, if there was any concurrence of jurisdiction in criminal cases. And we believe, that each of the propositions, is maintainable, by reason and analogy. As to the first, the reasons have already been offered, to shew why the act of 1796, did not extend the jurisdiction of the district courts, to penal cases. And as to the second, the same reasons, which extended the • right of challenge, in all criminal cases, in the district courts, and prohibited writs of error, in all such., apply with all their force, equally to the circuitcourts: and moreover, it is provided, in the act, establishing • circuit courts, that in all cases, in which the district md quarter sessions courts, had concurrent jurisdit *147 tion, the circuit courts shall be governed by the rules regulating the district courts; consequenly, the right of challenge, in the circuit courts, must exist in cases, of which the district courts, had jurisdiction, concurrently with the quarter sessions. And the same - consideration, if there were no other, would tend to shew that, in such cases, no writ of error could.be prosecuted. But although, this would be the corn elusion of strong argument, it would not be the net cessary consequence from the established premises, unless it be admitted, that if there were a concurrence of jurisdiction, in criminal cases, .by the district and quarter sessions courts, except in “penal cases,” the reason which prevented writs of error from the district courts, must exclude them from the circuit courts in the same cases. But then it might be replied, that the same reason applied to the extension challenge, and prevented writs of error in penal cases, because, it is the same court, (the circuit court) which tries them.-
To this replication, however, it might be rejoined, that the nature of penal cases* and the effect of thp statute, (as we haye construed it) denying .the challenge, in such cases, and allowing the writ.of error, would constitute sufficient grounds,-for the distinction.: and we are inclined to the. opinion, that, this answer would be sound.
It follows, therefore, that whether-the district and quarter sessions courts had any concurrent jurisdiction or not, the)sameconclusion is authorized, to wit: that in “penal cases’^1 alone, there is no right to a peremptory challenge of twenty; and that in these, and these alone, a writ of error may be prosecuted. We have no doubt, that a. writ-of .error will lie in “penal cases;”.and we have scarcely any doubt, that, in such cases, there is no,right to a peremptory chaj-. lenge of twenty. Our only doubt is, whether errqr will lie in any other criminal cases. .,
The difficulties which are inciden bio the doctrine of the concurrence of jurisdiction, have been suggested. They are not insuperable, and may be rationally and consistently disposed of, as .we believe they have been. But this construction of the acts of assembly, *148 leads to more circuity and doubt, than that whidb we had preferred; that is, that the quarter sessions, since the establishment of the district courts, had nó concurrent jurisdiction, in criminal cases, with the district courts, and had jurisdiction only, apd of course, exclusively, of such as were simply penal.
Either construction' of the acts will terminate, however, according to the reasoning which we have employed, in the same doctrine.
Having arrived at this conclusion, from the imperfect analysis, which w-e have.attempted of the vague, and apparently incongruous legislation on the subject before us, it necessarily results, that Montee had no right to a peremptory challenge of twenty in this case, and that his writ of error will lie.
It might not, however, be material to him, whether this conclusion or its converse, be established, as the true doctrine of the law. For if he be entitled to a challenge of twenty, it would be difficult, if not im* possible, to prove that this court could givé him relief by writ of error. Any argument which might tend to shew, that the writ of error will lie, could scarcely be consistent with that which must be used to establish the right of peremptory challenge. The pase of Lampton vs. the Commonwealth, proves, that error may be prosected in such a case as this; and, therefore, it would seem to follow, that, as the necessity for a peremptory challenge of twenty,' does not exist, there can be no such right in this case, it would be strange, if, in a case of simple penalty, the accused should have the right to a writ of error, and also, to a peremptory challenge of twenty, when in murder, the prisoner has a right to challenge only twenty, and has no right to a writ of error.'
Bat,,although, Montee might be thus in a dilemma, eithe^horn of which would be fatal to his casé, the principles involved in the question, under considera-., tion, are important to the community: and, therefore, as they have never before been considered by this court, or directly and distinctly decided by it, we have been compelled into a tedious and perplexing investigation,, for $he purpose of defining the extent *149 and application of peremptory challenges, and of writs of error in criminal cases.
We fee] satisfied with the limitations and distinct tions, which we have established; But we are not sure, whether the first or the last process of reasoning, which resulted in the same conclusion, is the most proper.ánd consistent. If there still shall remain any doubt as to the true doctrine, the fault must be ascribe ■ed to the crude and imperfect legislation on a subject so important; and the only corrective which can dispel all doubt, will be, as it should long ago have been applied.
An equitable and reasonable construction, will extend the same right of peremptory challenge, to “penal cases,” as that which is allowed in cases, strictly civil.
There is nothing formidable in'the third error assigned. The circuit judge would be a cypher, anda criminal trial before him, a farce, if he had no right to decide all questions of law, which might arise in the progress of the case.
The jury are the exclusive judges of the fads. In this particular, they cannot be controlled, and ought not to be instructed-by the court. -They are also “ex necessitate,” the ultimate judges, in one respect, of the law. If they acquit, the judge cannot grant a new trial, how much soever, they have misconceived of disregarded the law.
They have the right, in all cases, to find a general verdict of guilty or not guilty. As guilt or innocence, is a deduction from the law.and facts of the case, the jury must, therefore, necessarrily decide the law, incidentally, as well as the facts, before they can say,, that the accused is guilty or not gulity. The facts prove the nature and motive of the act, which has been done.' Whether the act, when its character shall be ascertained and fixed, be a breach of the law, must be determined before it can be known, whether the of-fence charged, has been committed. And hence, the jury must not only decide the facts, but also, the law which is charged to have been violated; by the act, which these facts establish j and by comparing the *150 facts with the law, decide whether the offence charged in the indictment has been proved. It is necessary., before this can be done, that the jury shall ascertain, and decide what the law is.
But, as the judge is the organ and expositor of the law, and is placed on the bench to explain it to the jury, it is not only his privilege, in all. cases, but it is his duty, when called on, to state what the law is. And. the jury should yield a respectful deference to the legal opinions of the court. They háve the legal power to contemn, and. overrule them, but they have no moral right to do so.
In I. Institutes, 155, b. in a note, Hargrave says, «‘Upon the whole, the result is, that the immediate and direct right of deciding upon questions of law, is intrusted to the judges; that in a jury, it is only incidental; that in the exercise of this incidental right, the latter are not only placed under the superintend:' anee of the former, but are, in some degree, controla-ble by them; and, therefore,, that in all points of law, arising on a trial, juries ought to shew the most respectful deference, to the advice and recommendation ©f judges; nor is it any small merit in this arrangement, that, in consequence of it, every person accused of a crime, is enabled, by the general plea of not guilty, to have the benefit of a,trial, in which the judge and-jury are a check upon each. other.
Wynne, in his Eunomus, Dialogue, 3. ,s. 53, saysr.. “all that may here be said, upon the subject of juries, is agreeable to the established maxim, ‘ad queslionem facti.’ It is undoubtedly true, that the jury are judges, the only judges of the fact, is it not equally within the spirit of the maxim, that judges only, have the competent cognizance of the law?” “Every verdict is compounded of law- and fact, but the law. and the fact are always distinct in their nature.”
The jury are sworn “well and truly, to try the issue, and a true verdict, to give according to the evidence.'''’ The court decides the law, on the indictment. If the act charged, do not amount to an offence, according to law, the indictment is not good. If the act charged, be a breach of the law, the jury try the fact, and ascertain whether the act has been committed with an *151 illegal intent. “The issue,” therefore, is chiefly oné of fact, and the verdict must be according to the evidence.
Many incidental questions of law, may arise, during the trial, which it is impossible that the jury can decide, and which, therefore, must be decided by the court.
The controversy, as to the right of the court to instruct the jury on the law, has arisen from the odious, and now abolished practice, in State Libels, of restricting the jury to a special verdict, finding tile fact of publication only. This was subversive of personal security, and contrary to the great end of trials by jury. And this grievous error, has been rectified by tolerating general verdicts of guilty or not guilty. A better security ought not to be desired; more would not be compatible with the public interest, nor reconcileable with the integrity of the laws. If the court erroneously decide the law, and thejury, in consequence thereof, improperly convict, a new trial may.be awarded. But if the jury err in their construction of the law, and in consequence of it, improperly acquit, there is no correction. The accused may then safely rely on the maxim, “nemo his punitur, aut vexatur proceodem delicto.” He should always be entitled to the benefit of an instruction by the court, when his interest or safety may require it. The right of the commonwealth must be reciprocal.
If the court had no right to decide on the law, error, confusion, uncertainty and licentiousness, would characterize the criminal trials; and the safety of the accused might be as much endangered, as the stability of public justice, would certainly be.
But the 8th section of the constitution of the state, 10th article, would remove all doubt, if otherwise there might be any. It declares, that “ in all indictments for libels, the jury shall have a right to determine the law and the facts, under the direction of the court, AS IN OTHER CASES.”
This needs no commentary. It clearly defines how the ¿ury may determine the law and the facts; and What shall be the province of the court. It presupposes, that in all cases, except prosecutions for libels,
In prosecutions, for setting up and keeping a gaming table orbank,court have right to inslr^ict jury, as to law of case.
Wickliffe, Bledsoe and Chinn, for appellant; Denny y attorney general, and Cowan, for appellee.
(for which it provides) the court had a pre-exisüng'ac - knowledged right, to direct the jury, as to the law; but leaves the jury then to decide the whole case, compounded of law and fact.
The court did not, therefore, in this case, err in giving the law to the jury. There is no complaint, that the law was not correctly expounded. The objection is, that the court usurped the prerogative of the jury, in presuming to advise as Ho the law.
The last error scarcely requires notice. The alleged error of the court, in another case, can surely not have prejudiced Montee. If no error to his prejudice, were committed by the court in his case, he cannot complain. If the court decided the law correctly in this case, the judgment will not be reversed, because, some other case was replete with errors.
Nor was it the duty of the court, without being asked, to notify the accused, of the extent of his right of peremptory challenge. It would have been as much its duty to notify him, of all his other rights.
Having disposed of ail the questions presented in the record, and detected no error, therefore, the judgment of the circuit court, is affirmed.