**COMMONWEALTH of Kentucky,**
**Appellant,**

v.

**Albert Ray DURHAM, Sr. Appellee**

**No. 1998–SC–0816–CL.**

Supreme Court of Kentucky.

Oct. 25, 2001.

SCR 3.130–8.3(c).

A.B. Chandler, III, Attorney General, Matthew D. Nelson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Christopher Brown, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellant.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellee.

KELLER, Justice.

Albert Ray Durham, Sr. was accused of firing numerous shots into an occupied trailer and injuring two (2) of the seven (7) persons inside. The Bell County Grand Jury returned an indictment against Durham charging him with two (2) counts of First–Degree Assault and five (5) counts of First–Degree Wanton Endangerment. Durham entered a plea of not guilty and the case was tried to a jury in the Bell Circuit Court.

At the conclusion of the evidence and over the Commonwealth's objection,[1] the

---

1. In addition to their objections to the trial court's instructions, the Commonwealth ten-

trial court submitted the case to the jury upon written interrogatories which required the jury to make certain factual findings but did not require the jury to return a traditional verdict[2] indicating whether it found the defendant guilty or not guilty. The first written interrogatory read:

> I. Do you find from the evidence beyond a reasonable doubt that Albert Durham, Sr., at the time and place, and on the occasion, fired shots into the trailer of Gene Miller?

ANSWER: Yes ⸺ No ⸺

_____

FOREPERSON

If your answer was No, return to Courtroom.[3]

The jury answered "No" to this interrogatory and returned to the courtroom. The trial court subsequently entered a judgment of acquittal and dismissed the indictment with prejudice.

Pursuant to Kentucky Constitution § 115[4] and Civil Rule 76.37(10),[5] the Com-

dered jury instructions patterned after specimen instructions set forth in 1 Cooper, Kentucky Instructions to Juries (Criminal) §§ 3.37 (First-degree assault; intentional or wanton; deadly weapon), 3.40 (Second-degree assault; intentional and physical injury; deadly weapon); 3.55 (Fourth-degree assault; intentional or wanton); 3.58 (First-degree wanton endangerment); 3.59 (Second-degree wanton endangerment); & 3.60 (Menacing) (4th ed.1993) (hereinafter "Cooper"). Durham accepted the trial court's instructions.

2. From a review of reported Kentucky decisions and texts on instructions in criminal cases, the guilt phase jury instructions in Kentucky familiar to this generation of trial judges and attorneys have traditionally stated what the jury must believe from the evidence beyond a reasonable doubt in order to find a defendant guilty of an offense and directed the jury to find the defendant not guilty if, upon the whole case, it has a reasonable doubt as to the defendant's guilt. 1 John S. Palmore & Robert G. Lawson, Instructions to Juries in Kentucky (Criminal) Preface at iii (1975) ("The purpose of instructions, in Kentucky, is to tell the jury _simply_ and _plainly_ what it must believe from the evidence and, in a criminal case, beyond a reasonable doubt) in order to resolve each issue in favor of the party with the burden of proof on that issue, and what it is to do if it does or does not so find." (emphasis in original) (paraphrasing _Webster v. Commonwealth,_ Ky., 508 S.W.2d 33, 36 (1974) ("The function of instructions in this jurisdiction is only to state what the jury must believe from the evidence (and in a criminal case, beyond a reasonable doubt) in order to return a verdict in favor of the party who bears the burden of proof.")); Cooper,

_supra_ note 1 at § 1.52; 3 Stanley's Instructions to Juries (Criminal Cases) § 762 (2nd ed.1957).

3. In the other interrogatories, the trial court asked the jury to determine whether or not: (1) Durham knew that the trailer was occupied; (2) Durham "intended to cause physical injury to the occupants of the trailer," (3) Durham acted "with wanton disregard for the safety of the occupants," and (4) Durham acted in self-protection. Finally, the interrogatories asked the jury to determine the number of persons present in the trailer at the time of the shooting, the number of persons injured, and the extent of those injuries. In addition to the interrogatories, the instructions included a reasonable doubt instruction as required by RCr 9.56 and definitions of certain words and phrases used in the interrogatories (e.g., the relevant culpable mental states, "physical injury" and "serious physical injury").

4. "In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court, except that the Commonwealth may not appeal from a judgment of acquittal in a criminal case, other than for the purpose of securing a certification of law ...." KY. CONST. § 115.

5. "A request by the Commonwealth of Kentucky pursuant to Section 115 of the Constitution of Kentucky shall be initiated in the Supreme Court. The request shall be initiated within thirty (30) days of a final order adverse to the Commonwealth. The Commonwealth shall initiate the certification procedure by motion requesting the Supreme Court to ac-

monwealth requested, and this Court accepted, certification of the law as to the following question:

> Whether jury instructions in a criminal case, phrased in the form of so-called "interrogatories" satisfy long-standing requirements of Kentucky law.[6]

RCr 9.54(1) outlines the basic principles governing jury instructions in criminal cases:

> It shall be the duty of the court to instruct the jury in writing on the law of the case, which instructions shall be read to the jury prior to the closing summations of counsel. These requirements shall not be waived except by agreement of both the defense and prosecution.[7]

While our Rules of Criminal Procedure contain no provision specifically authorizing trial courts in criminal cases to instruct the jury of the law of the case via fact-based interrogatories, our Rules of Civil Procedure authorize the use of such interrogatories in connection with both special verdicts[8] and general verdicts[9] in civil matters tried before a jury:

> **Rule 49.01 Special verdicts.**
>
> The court may require a jury to return *only a special verdict* in the form of a special written finding upon each issue of fact. In the event the court may submit to the jury written questions susceptible of categorical or other brief answers or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other

---

cept the question(s) for review...." CR 76.37(10).

**6.** The Commonwealth requests that the law be certified "as precluding use of special verdicts and interrogatories in criminal cases except in very narrow and particular circumstances."

**7.** RCr 9.54(1).

**8.** *See* 3 Bouvier's Law Dictionary 3392 (3rd rev. 8th ed. 1914) ("A special verdict is one by which the facts are found, and the law is submitted to the judges."); Black's Law Dictionary 1555 (7th ed. 1999) ("A verdict that gives a written finding for each issue, leaving the application of the law to the judge." *Id.*); 75B Am.Jur.2d (Trial) § 1835 ("A special verdict is a determination by the jury, in lieu of a general verdict, of those facts embraced within the issues which give rise to legal conclusions, the decision of the cause on those facts being referred to the court."); Kentucky Code of Practice in Criminal Cases (hereinafter "Crim.Code Prac.") § 259 (1877) (repealed 1963) ("A special verdict is a finding of the facts only, leaving the law arising on the facts to the judgment of the court[ ] ...."); *Wilson v. Commonwealth*, Ky., 141 Ky. 341, 132 S.W. 557, 560 (1910) ("At the common law the jury either returned special verdicts, setting forth

the facts supporting the prosecution and prayed the judgment of the court thereon, or a general verdict of guilty. Thereupon the punishment was fixed by the court and enforced by ministerial officers charged by the law with that duty." (citing 4 Blackstone's Commentaries, p. 361)); *Commonwealth v. Hager*, Ky., 41 S.W.3d 828, 836 n. 2 (2001) ("Interrogatory instructions require the jury to reach a series of mini-verdicts, instead of one unanimous verdict with respect to the ultimate issue of guilt or innocence.").

**9.** *See* 3 Bouvier's Law Dictionary 3392 (3rd rev. 8th ed. 1914) ("A general verdict is one by which the jury pronounce at the same time on the facts and the law, either in favor of the plaintiff or defendant."); Black's Law Dictionary 1555 (7th ed. 1999) ("A verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions."); 75B Am.Jur.2d (Trial) § 1751 ("A general verdict is one by which the jury pronounces generally on all or any of the issues, in favor of either plaintiff or defendant."); Crim.Code Prac. § 257(2) ("Upon a plea of 'not guilty,' [a general verdict] is 'guilty,' or 'not guilty'; and if 'guilty,' fixing the offense and the degree of the offense and the punishment, in cases in which the jury is required to fix the degree of punishment." ); *Wilson v. Commonwealth, supra* note 8 at 560.

method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such written instructions concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.... [10]

**Rule 49.02 General Verdict Accompanied by answer to interrogatories.**

The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The Court shall give such written instructions as may be necessary to enable the jury *both to make answers to the interrogatories and to render a general verdict,* and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and

verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial.[11]

Because our criminal rules provide that our civil rules are "applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure" [12] the question for certification presents a two-fold issue: (1) does RCr 9.54 permit trial courts in criminal cases "to instruct the jury on the law of the case" in the form of fact-based interrogatories?; and (2) if so, does RCr 9.54 permit trial courts to utilize such interrogatories without also requiring the jury to return a general verdict? These questions require us to interpret RCr 9.54 within the historical context of jury verdicts in criminal cases.

Initially, we recognize that "special verdicts originated in England centuries ago and were proper under the common law," [13] and that "the jury either returned special verdicts, setting forth the facts supporting the prosecution and prayed the judgment of the court thereon, or a general verdict of guilty," [14] but that the jury

---

10. CR 49.01 (emphasis added).

11. CR 49.02 (emphasis added).

12. RCr 13.04.

13. 1 Stanley's Instructions to Juries (Civil Cases) § 49 (2nd ed.1957). *See also* Morgan, A Brief History of Special Verdicts and Special Interrogatories, 32 Yale L.J. 575 (1923) (hereinafter "Morgan") ("In criminal cases as well, the jurors frequently returned special findings, particularly where the act alleged had actually occurred, but without criminality upon the part of the accused." *Id.* at 581); *But see People v. Ramsey,* 422 Mich. 500, 375 N.W.2d 297, 307–308 (1985) ("At common

law, the jury in a criminal prosecution ordinarily returned a general verdict—guilty or not guilty. Alternatively, the jury might return with a statement of findings of fact without a general verdict.... It appears that the jury returned with only findings of fact and no verdict when it was unsure of the proper application of the law to the facts[] ....").

14. *Wilson v. Commonwealth, supra* note 8 at 560 (After the return of either a special verdict supporting a judgment of conviction or a general verdict of guilty, "the punishment was fixed by the court ....")

had the right to return a general verdict.[15] While Kentucky's former Code of Practice in Criminal Cases expressly authorized the use of special verdicts in criminal cases,[16] general verdicts were commonplace in criminal cases, and special verdicts fell into disuse.[17]

Although the Rules of Criminal Procedure, which we adopted simultaneously with the Criminal Code's repeal,[18] do not expressly authorize the use of special verdicts, neither do they prohibit their use.[19] To the contrary, both our criminal rules and the later-enacted Kentucky Penal Code direct the use of types of special verdicts[20] in certain criminal cases—e.g., when the defense is premised upon mental illness[21] and in KRS Chapter 531 prosecutions.[22] In addition, both statutory and

---

**15.** *See* Morgan, *supra* note 13 at 591 ("It, therefore, seems safe to assert that at common law the jury almost from the beginning had the right to return a general verdict in all civil cases and in most criminal cases, and that by the close of the eighteenth century it had acquired this right in all criminal cases.").

**16.** *See* Crim.Code Prac. § 256 ("The jury may render *either* a general or special verdict." (emphasis added)); § 259 ("A special verdict is a finding of the facts only, leaving the law arising on the facts the judgment of the court ...."); § 260 ("A special verdict must present the conclusions of fact as established by the evidence, and not the evidence of those facts, and the facts must be so presented that the court has nothing to do but draw the conclusions of law upon them."); § 261 ("The special verdict must be reduced to writing by the jury, and read to them in the presence of the court. It shall not be received by the court unless it pronounce, affirmatively or negatively, on the facts necessary to enable the court to give judgment."); 3 Stanley's Instructions to Juries (Criminal Cases) *supra* note 3 at § 778("Special verdicts are allowed by the Criminal Code under proper written instructions. The requisites are therein stated.").

**17.** *See supra* note 2 and surrounding text.

**18.** 1962 Ky. Acts, Chapter 234 §§ 61(2), 63.

**19.** At least, one court, however, suggested that the absence of a criminal procedural rule indicates a proscription against the use of special verdicts generally in criminal cases. *United States v. Spock*, 416 F.2d 165, 180 (1st Cir.1969) ("While the absence of a rule is not necessarily determinative, ... it is highly suggestive.").

**20.** These so-called "special verdicts" are more analogous to a verdict under CR 49.02—a general verdict accompanied by written answers—than special verdicts under CR 49.01, *see supra* notes 10 and 11, because they are accompanied by a general verdict of guilty or not guilty.

**21.** *See* RCr 9.90(1) ("If the defense of insanity is made by the defendant, the jury must be instructed to state the finding of insanity in their verdict if they acquit the defendant on that ground." *Id.*); KRS 504.120:

> In cases in which the defendant provides evidence at trial of his mental illness or insanity at the time of the offense, *the jury* or court *may find the defendant:*
> (1) Guilty;
> (2) Not guilty;
> (3) *Not guilty by reason of insanity at the time of the offense; or*
> (4) *Guilty but mentally ill at the time of the offense.*

*Id.* (emphasis added); 9 Abramson, West's Kentucky Practice, Criminal Practice § 30.30 at 312 (3rd Ed.1997) ("[Special verdicts] of a sort exist where the jury must specify not guilty by reason of insanity or guilty but mentally ill.").

**22.** *See* KRS 531.080:

> (1) The jury, or the court, if a jury trial is waived, shall render a general verdict, and shall also render a special verdict as to whether the matter named in the charge is obscene. The special verdict or findings on the issue of obscenity may be: 'We find the _____ (title or description of matter) to be obscene,' or, 'We find the _____ (title or description of matter) not to be obscene,' as they may find each item is or is not obscene.
> (2) Whenever a person is tried for distribution of matter portraying a sexual perfor-

case law require juries to make special findings in cases where the penalty range for an offense increases if a jury finds an additional aggravating circumstance.[23]

While not necessarily establishing a per se rule against special verdicts, most other jurisdictions which have addressed the issue have generally expressed disfavor with the use of special verdicts in criminal cases [24] but recognize their value in certain

contexts and allow trial courts the discretion to utilize them.[25]

The majority of the criticism levied against special verdicts in criminal cases is based on the belief that instructions requiring a chain of fact-based determinations "might be devices for bringing judicial pressure to bear on juries in reaching their verdicts." [26] Others have condemned jury instructions which compel special ver-

mance by a minor, the jury, or the court, if a jury trial is waived, shall render a special verdict as to whether the matter named in the charge portrays a sexual performance by a minor. The special verdict or findings on the issue of whether or not the matter portrays a sexual performance by a minor may be: 'We find the _____ (title or description of matter) to portray a sexual performance by a minor,' or, 'We find the _____ (title or description of matter) not to portray a sexual performance by a minor,' as they may find each item to portray or not to portray a sexual performance by a minor. *Id.; Smith v. Commonwealth,* Ky., 465 S.W.2d 918, 920 (1971) ("The instructions to the jury specifically required the jury to find beyond a reasonable doubt that the accused 'had knowledge' of the obscenity of the material before any finding of guilt could be had.").

**23.** *See* KRS 532.025(3) ("The jury, if its verdict be a recommendation of death, or imprisonment for life without benefit of probation or parole, or imprisonment for life without benefit of probation or parole until the defendant has served a minimum of twenty-five (25) years of his sentence, shall designate in writing, signed by the foreman of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt." *Id.*). *See also Clay v. Commonwealth,* Ky., 818 S.W.2d 264 (1991) (subsequent drug offense); *Dedic v. Commonwealth,* Ky., 920 S.W.2d 878 (1996) (subsequent offense of driving while under the influence of alcohol). We again note that these special findings, vis-a-vis special verdicts, are preceded by a general verdict of guilty.

**24.** See *United States v. Bertoli,* 854 F.Supp. 975, 1067–68 (D.N.J.1994) (compiling federal

cases); *State v. Heald,* 307 A.2d 188 (Me. 1973); *State v. Robinson,* 476 N.W.2d 896 (Minn.App.1991); *State v. The Greater Huntington Theatre Corporation,* 133 W.Va. 252, 55 S.E.2d 681 (1949).

**25.** *State v. Bell,* 770 P.2d 100 (Utah 1988) (racketeering charges); *State v. Robinson, supra* note 24 (sentencing); *United States v. Ruggiero,* 726 F.2d 913 (2nd Cir.1984) (predicate acts in RICO cases); *United States v. Ellis,* 168 F.3d 558 (1st Cir.1999) (sentencing); *United States v. Pforzheimer,* 826 F.2d 200 (2nd Cir.1987) (sentencing); *United States v. Sims,* 975 F.2d 1225 (6th Cir.1992) (sentencing); *United States v. Reed,* 147 F.3d 1178 (9th Cir.1998) ("determine the occurrence of any of a series of acts, each of which is sufficient to constitute the indicted crime[ ] ...."); *United States v. Palmeri,* 630 F.2d 192 (3rd Cir.1980) ("constructing a chain of findings.").

**26.** *United States v. O'Looney,* 544 F.2d 385, 392 (9th Cir.1976); *United States v. Spock, supra* note 19 at 182:

There is no easier way to reach, and perhaps force, a verdict of guilty than to approach it step by step. A juror, wishing to acquit, may be formally catechized. By a progression of questions each of which seems to require an answer unfavorable to the defendant, a reluctant juror may be led to vote for a conviction which, in the large, he would have resisted. The result may be accomplished by a majority of the jury, but the course has been initiated by the judge, and directed by him through the frame of the questions.

*Id.; Commonwealth v. Hager, supra* note 8 at 836 n. 2 ("Requiring[ ] ... multiple mini-verdicts on interrogatory instructions simply

dicts or findings because they impair the Constitutional right of trial by jury:

> It is one of the most essential features of the right of trial by jury that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit.[27]

And, some argue that a combination of these concerns threaten a criminal defendant's right to procedural due process:

> Any objection to this procedure must necessarily be based on an argument that it impairs the defendant's constitutional rights to be tried by a jury and to due process of law. To ask the jury special questions might be said to infringe on its power to deliberate free from legal fetters; on its power to arrive at a general verdict without having to support it by reasons or by a report of its deliberations; and on its power to follow or not to follow the instructions of the court. Moreover any abridgement or modification of this institution would partly restrict its historic function, that of tempering rules of law by common sense brought

to bear upon the facts of a specific case.[28]

In any event, the law is well-settled in Kentucky that "[i]t is for the jury to find the ultimate fact of guilt upon the evidence, under instructions of the court as to the law." [29] In so doing, they have the right to return a general verdict even if that right, as a practical matter, empowers juries to return verdicts contrary to the law:

> The jury are the exclusive judges of *the facts*. In this particular, they cannot be controlled, and ought not to be instructed by the court. They are also *"ex necessitate,"* the ultimate judges, in one respect, of the law. If they acquit, the judge cannot grant a new trial, how much soever, they have misconceived or disregarded the law. *They have the right, in all cases, to find a general verdict of guilty or not guilty.* As guilt or innocence, is a deduction from the law and facts of the case, the jury must, therefore, necessarily decide the law, *incidentally*, as well as the facts, before they can say, that the accused is guilty or not guilty.[30]

---

increases the likelihood of instructional error.").

**27.** George B. Clementson, Special Verdicts and Special Findings by Juries, 49 (photo. reprint 1999) (1905) (hereinafter "Clementson").

**28.** *United States v. Ogull*, 149 F.Supp. 272, 276 (S.D.N.Y.1957) (footnotes omitted); *State v. Heald, supra* note 24 at 193:

> We conclude that unless the interrogatories were of the type designed 'to lead the jurors down the guilty trail' and that the jury verdict becomes but a 'hollow affirmation' from jurors catechized by the questions they have been compelled to answer, the constitutional concepts of due process and trial by jury are not violated . . . .

*Id.* (citation omitted).

**29.** *Bardin v. Commonwealth*, Ky., 191 Ky. 651, 231 S.W. 208, 209 (1921). *See also Young v. Hunt*, Ky., 781 S.W.2d 503, 510 (1989) ("In a criminal case the jury must determine the fact of guilt or innocence."); *Beets v. Commonwealth*, Ky., 437 S.W.2d 496, 499 (1969) ("An instruction must submit to the jury the issue of guilt or innocence of the accused of the crime for which he stands trial."); *United States v. Spock, supra* note 19 at 181 ("It is one of the most essential features of the right of trial by jury that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit." *Id.* (quoting Clementson, *supra* note 27 at 49)).

**30.** *Montee v. Commonwealth*, 26 Ky. 132, 149 (1830) (emphasis added).

 Trial courts cannot, therefore, enter a judgment of conviction in a criminal case solely upon a jury's special verdict—although, by definition, a special verdict includes the jury's factual findings—without impermissibly infringing upon a defendant's right to trial by jury, in effect, directing a verdict of guilty:

> *A court is without right to direct a jury to find a defendant guilty where his plea is not guilty.*

By section 7 of the Bill of Rights of our Constitution it provided that the ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modification as may be authorized by the Constitution.

. . . .

> *[I]t is never proper for the court to direct a verdict of guilty where there is a plea of not guilty, notwithstanding the fact that the evidence of his guilt may be convincing and wholly uncontradicted.* Under the constitutional guaranty that a person charged with the commission of a crime is entitled to a trial by jury, the accused person has, in every case where he has pleaded not guilty, the absolute right to have the question of his innocence or guilt submitted to a jury, no matter what the state of the evidence may be.[31]

 We recognize that there are cases and circumstances in which eliciting particularized information from the jury is necessary and permissible,[32] and we thus believe that RCr 9.54(1) does not prohibit all uses of fact-based interrogatories in criminal jury instructions. Because a jury in a criminal case has the right to return a general verdict, however, we believe that all jury instructions in criminal cases must provide a verdict form which permits the jury to return a general verdict of either guilty or not guilty. Trial courts' jury instructions in criminal cases cannot, therefore, consist *solely* of the fact-based interrogatories and/or special verdicts as authorized in civil cases by CR 49.01. We nonetheless believe the procedure described in CR 49.02, whereby fact-based interrogatories accompany a general verdict, is consistent with our criminal rules—with the caveat that a trial court may not direct a verdict contrary to the jury's general verdict of not guilty.

 We therefore certify that trial courts may utilize such interrogatories in their jury instructions if, and only if, those interrogatories are accompanied by verdict forms which authorize the jury to return a general verdict.[33] However, we reiterate our belief that, unless directed otherwise by statute, court rule, or precedent, trial courts should utilize jury instructions which call for special verdicts only sparingly and upon careful consideration of the defendant's due process rights.

The law is so certified.

LAMBERT, C.J.; JOHNSTONE, KELLER, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs in part and dissents in part by separate opinion in which GRAVES, J., joins.

COOPER, Justice, concurring in part and dissenting in part.

I disagree with the majority's conclusion that CR 49.02 applies to instructions in

---

**31.** *Bardin v. Commonwealth, supra* note 29 at 209 (emphasis added).

**32.** *See supra* notes 21–23 and 25 and surrounding text.

**33.** *See* Cooper, *supra* note 1 at § 2.08, 2.09 at 78–81.

criminal cases. RCr 13.04 provides that "[t]he Rules of Civil Procedure shall be applicable in criminal proceedings to the extent not superseded by *or inconsistent with* these Rules of Criminal Procedure." (Emphasis added.) When CR 49.02 was adopted, Sections 256 and 259 of the Code of Practice in Criminal Cases permitted juries to render special verdicts, defined in Section 260 as "conclusions of fact as established by the evidence, and not the evidence of those facts." When the Criminal Code was replaced by the present Criminal Rules in January 1963, the provision for special verdicts was deleted and RCr 9.82 now states: *"The* verdict shall be unanimous. *It* shall be returned by the jury in open court." (Emphasis added.) The implication is clear; there shall be only one verdict. Thus, the provision for multiple verdicts in civil cases in CR 49.02 is "inconsistent with these Rules of Criminal Procedure."

The majority correctly notes that certain penal code provisions require special verdicts with respect to aggravating circumstances, obscenity, and sexual performances by minors. However, I would limit the use of interrogatories or form verdicts to only those that are required by such provisions or that are necessary to determine the type of penalty phase required upon conviction, *e.g.*, whether a conviction of kidnapping requires a penalty phase as described in KRS 532.055 or as described in KRS 532.025. Otherwise, interrogatories and special verdicts serve no purpose. If a general instruction with respect to an offense requires the jury to find the existence of each element of that offense beyond a reasonable doubt, what purpose is served by separate interrogatories with respect to those elements? The instructions described in *Commonwealth v. Hager*, Ky., 41 S.W.3d 828 (2001), are representative of the mischief that can result when a jury is required to struggle through a maze of mini-verdicts before returning a general verdict of guilt or innocence.

Finally, what if the jury answers "yes" to the interrogatories with respect to each element of the offense, but returns a verdict of "not guilty"? "[I]n a criminal case it is a longstanding common law tradition ... that the jury always has the option of disbelieving the evidence offered to prove guilt and returning a 'not guilty' verdict." *Medley v. Commonwealth*, Ky., 704 S.W.2d 190, 191 (1985). The following is said in *United States v. Leach*, 632 F.2d 1337 (5th Cir.1980):

Of course, the jury may have believed the Government's case and still have acquitted Leach. Jury nullification—the right of a jury to acquit for whatever reasons even though the evidence supports a conviction—is an important part of the jury trial system guaranteed by the Constitution. In this case, it is not inconceivable that the jury might have been offended by the number of government witnesses who had been allowed to plead guilty to greatly reduced charges in return for their testimony, and might have felt it unfair to convict Leach in light of the lenient treatment received by the others.

*Id.* at 1341 n. 12.

While it is easy to say that the general verdict prevails over the special verdict, what of the argument that the return of a not-guilty verdict after finding the existence of all the elements of an offense is not a disregard of the evidence but a disregard of the law? *Cf. Medley, supra*, at 191:

Counsel has the right to argue that the jury may disbelieve the evidence and find the defendant not guilty, but no right to argue that it may disregard the law because it believes the minimum

penalty set by the legislature is too severe.

Worse, what if the jury returns a general verdict of guilty but an answer of "No" to an interrogatory as to one of the elements of the offense?

I, for one, prefer to keep Pandora's box closed and leave the jury's deliberations in the jury room where they properly belong. *See* RCr 10.04; *Grider v. Commonwealth,* Ky., 398 S.W.2d 496 (1966).

GRAVES, J., joins this opinion, concurring in part and dissenting in part.