**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Jerry Ray JAMES, Chester Arthur Schutz, Clifford Henry Bowen, James Timothy Overton, Benjamin Thomas Tisdale, and Dale Norwood Hall, Defendants-Appellants.**

**No. 26375.**

United States Court of Appeals,
Fifth Circuit.

Oct. 2, 1970.

Rehearing Denied and Rehearing En Banc Denied Jan. 5, 1971.

George M. Thurmond, Del Rio, Tex., for Jerry Ray James (now out of case); Jerry Ray James, pro se.

Haygood Gulley, Del Rio, Tex., for Dale Norwood Hall; Dale Norwood Hall, pro se.

Max P. Flusche, Jr., Austin, Tex., for Chester Arthur Schutz.

V. F. Knickerbocker, Midland, Tex., for Benjamin Thomas Tisdale.

James R. Gillespie, San Antonio, Tex., for James Timothy Overton and Clifford Henry Bowen.

Seagal V. Wheatley, U. S. Atty., Ralph H. Harris, III, Asst. U. S. Atty., Ernest Morgan, Sp. Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before TUTTLE, DYER and CLARK, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by six defendants from a judgment of conviction following a jury trial, in the Western District of Texas. The indictment charged 20 defendants with a conspiracy under 18 U. S.C. § 371 to violate various Federal criminal statutes, the violation of each such statute being alleged as an object of the conspiracy. These objects were:

(1) Violation of 18 U.S.C.A. § 1952 by travelling in Interstate Commerce with intent to distribute the proceeds of unlawful prostitution offenses committed against the laws of various states, or with intent to promote such unlawful activities.

(2) Violation of 18 U.S.C. § 2113(a), by taking by force from the person or presence of others money belonging to or in care of, various FDIC insured banks.

(3) Violation of 18 U.S.C. § 2113(a) by entering various FDIC insured banks with intent to commit therein certain felony offenses, affecting such banks including larceny.

(4) Violation of 18 U.S.C. § 2113(c), by receiving and concealing money known to have been unlawfully taken from FDIC insured banks.

(5) Violation of 18 U.S.C. § 2113(b) by stealing money in excess of $100 belonging to or in the care of various FDIC insured banks.

(6) Violation of 18 U.S.C. § 2314, by transporting in Interstate Commerce goods and monies of more than $5,000 in value knowing same to have been stolen.

Prior to and during the course of the trial, five of the defendants were severed and not tried. At the conclusion of the evidence, the motions for judgment of acquittal of four defendants were sustained and a mistrial was declared as to one other. Of the remaining ten defendants, the jury, on the basis of special interrogatories, acquitted the four female defendants, whose alleged guilt concerned acts of prostitution, but convicted the remaining six who now appeal: Chester Arthur Schutz, Benjamin Thomas Tisdale, James Timothy Overton, Clifford Henry Bowen, Dale Norwood Hall, and Jerry Ray James.

Appellants raise many points on appeal. Though we have carefully considered all of them, we will discuss, in detail, only those we consider to raise serious questions.

■ Appellants argue that the evidence proves multiple conspiracies, not a single on-going conspiracy, and that the court's failure to treat the case in such a manner was so prejudicial to them that reversible error was committed. We disagree. While we are well aware of the distinction between several offenses being the multiple objects of a single agreement or the separate objects of distinct agreements, our examination of the record satisfies us that there is substantial evidence to support a jury finding of one, overall conspiracy.

This record consists of nearly 9,000 pages of testimony about 300 written motions, and the proceedings at pre-trial hearings which consumed over six weeks. The trial itself took four months to complete. A detailed discussion of the voluminous evidence would unduly extend this opinion. However, we have

carefully examined the evidence with respect to each alleged error called to the court's attention by the several briefs of appellants. A brief overview of the case is necessary for an understanding of our opinion.

During the period from March 13, 1964 to about April 20, 1966, the jury found that appellants travelled about the country in groups of varying size committing a number of crimes, consisting primarily of robberies of federally insured banks. The *modus operandi* for each robbery was basically the same. Banks located in towns too small to have significant, if any at all, police protection were chosen. The safes were assaulted but, primarily those in which the currency was kept, without much success. The silver, however, was taken and safety deposit boxes were entered.

Throughout this period, the evidence warrants a finding that the Overton Transmission Exchange served as a headquarters for the above operations. All of the appellants, with the exception of Hall and Tisdale, regularly frequented the shop. Burglary tools such as crow bars, punches and a magnetic drill as well as a good deal of black clothing, several pairs of rubber soled shoes and gloves were kept there. In addition, the evidence also reveals that a safe, similar to those in which banks kept their currency, was, for a period of time, also kept there and various members of the gang utilized the above and other tools in an attempt to learn how to penetrate it. Finally, there is testimony to the effect that at least on one occasion at the Exchange, James and Overton had a discussion as to which of them was the leader of the gang. Indeed, there is ample evidence that both were involved in the alleged conspiracy from start to finish and, in effect, were the nucleus of it. Their continuing participation in nearly all the robberies as well as the evidence above provide the necessary thread justifying a jury finding of one, overall conspiracy.

Appellant Hall, however, claims that the evidence is insufficient to link him to this conspiracy. Though there is ample proof that he participated in the bank robbery at Pond Creek, Oklahoma, he contends that evidence of this single transaction is insufficient to permit the inference that he knew of the massive conspiracy as outlined above.

Appellant relies primarily on United States v. Aviles, 274 F.2d 179 (2nd Cir., 1960). In this case, one of the defendants made a single purchase of heroin from one of the conspirators. The issue presented was whether this transaction was sufficient to infer that the defendant had knowledge of the conspiracy and willingly joined it. The court ruled that this was not enough and in so doing, stated:

> A single act may be the foundation for drawing the actor within the ambit of a conspiracy. \* \* \* But, since conviction of conspiracy requires an intent to participate in the unlawful enterprise, the single act must be such that one may reasonably infer from it such intent. Thus, when two men join together to commit a single robbery, one may infer from their common participation in the robbery that they have conspired to commit the robbery. However, in a multiparty conspiracy of the sort revealed in the present case, with actors performing many different tasks in many places, the inference does not necessarily follow from one contact with one member of the conspiracy.

In the case at bar, appellant Hall had more than *one* contact with *one* member of the conspiracy. The evidence reveals that for some days prior to the Pond Creek burglary, Schutz and Hall had rented a house in Wichita, Kansas. They were under constant surveillance during the entire time they were there and a number of cars were seen at the residence, including that of appellant Bowen. After leaving Pond Creek, the evidence reveals that Hall along with Schutz went to Oklahoma City to the apartment of appellant Tisdale where they, along with Bowen and James, discussed their plans to burglarize the

Pond Creek Bank. Clearly, this is more than simply *one* contact with *one* member of the conspiracy. With the exception of Overton, Hall was in contact with all of the appellants. Moreover, prior to this robbery, they had all been involved in at least two bank robberies, and in the case of James, five. It was thus permissible for the jury to infer that Hall was aware of the overall conspiracy. The jury could certainly infer that, in the course of their continued association for days on end, the others referred to the prior robberies in planning the Pond Creek affair. In short, Hall's participation in this robbery was hardly the same as a single purchase of heroin from a single member of a conspiracy.

Appellants' second serious contention is that a search made of appellant Bowen's wallet was in violation of the Fourth Amendment and resulted in a chain of circumstances, proof of which was admitted in evidence, and that this constituted reversible error.

The undisputed facts are that while Bowen was in jail under legal arrest, he gave his clothes and personal effects to the sheriff. Some six hours after the arrest, an F.B.I. agent arrived and asked if he could look at Bowen's bag or "shuck." The Sheriff turned the property over to the agent who then searched Bowen's wallet. In it he found a receipt giving a room number of a motel in Amarillo, which was about 100 miles from where the last bank robbery occurred. Using this, the F.B.I. agent went straight to the motel and staked it out. Two days later, John Flannigan, a lawyer for some of the defendants, came to the motel, gave the name of the supposed occupant of the staked out room (an assumed name), obtained the key and proceeded to load a '66 Caprice Chevrolet with various burglary tools and other items of an incriminating nature in the room. As he began to drive away, Flannigan was arrested (the legality of this arrest is not in question) and then gave his consent to a search of the car, which, he said, had been given

to him as a fee for representing some of the defendants.

■ At trial, appellants all moved to exclude this evidence as being "fruit of a poisonous tree," that is, the allegedly illegal search of Bowen's wallet. In light of the Supreme Court's decision in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), however, it is clear that only Bowen has standing to challenge this search.

As the Supreme Court noted:

> "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing. Id. at 171, 89 S.Ct. at 965.

In determining whether that search was legal, we must first examine this court's recent pronouncement in Brett v. United States, 5 Cir., 412 F.2d 401 (1969). The Brett case held that where a prisoner was in jail under a legal arrest for the unlawful importation and unlawful facilitation of transportation and concealment of heroin and a government official was permitted, several days later, to look at his clothing and there found traces of heroin, such a search was illegal. The information obtained thereupon was the fruit of the illegal search and a conviction based on such information or evidence as a result thereof had to be set aside.

■■ We conclude that the instant case is distinguishable from Brett. The validity of warrantless searches may best be determined by balancing the extent of the invasion of privacy that occurs against the need for governmental action. See, e. g., Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925); Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Here, as in Brett, the invasion of privacy is minimal. Appellant was under lawful arrest

and in custody. His clothes and personal effects, which would have been searched incident to the arrest, were also in lawful custody. As the First Circuit noted in dealing with a search made at the police station forty minutes after arrest:

> * * * while the legal arrest of a person should not destroy the privacy of his premises, it does for at least a reasonable time and to a reasonable extent take his own privacy out of the realm of protection from police interest in weapons, means of escape and evidence. United States v. DeLeo, 422 F.2d 487 (1st Cir., 1970).

Nevertheless, though the invasion of privacy is minimal, we feel that there must be significant need on the part of the government to justify a warrantless search.

█ In Brett, there was no reason whatsoever not to get a warrant. There was simply no governmental need for quick action. Obtaining a warrant would not have undercut the purpose of the search. In the case at bar, however, we are dealing with a conspiracy involving the robbery of banks by several persons. At the time of the search in question, there was reason to believe that some conspirators might still be at large. The F.B.I. was attempting to apprehend the entire gang and it is reasonable to infer that they wanted to do this before the others could flee even further from the scene of the crime. Thus, the purpose of the search was to find evidence that could lead to those still at large. As the Supreme Court noted in Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the various justifications for warrantless searches depend "in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." We feel that in this case effective law enforcement would have been frustrated if there was any delay. This fact, coupled with the fact that here there was a minimal invasion of privacy justified this warrantless search.

Appellants next argue that the trial court materially and prejudicially erred in submitting special interrogatories to the jury. In addition to instructing the jury to return a finding of "guilty" or "not guilty" as to each defendant, the court further instructed the jury to return "special findings," thereby inquiring as to which offenses alleged in the indictment to be objects of the conspiracy they found the defendants to have conspired to commit. Since six offenses were alleged to be objectives of the conspiracy, six separate requests for special findings were submitted.

We do not minimize the seriousness of the error when a trial court submits special interrogatories to the jury in a criminal case. As the First Circuit has recently stated:

> In the exercise of its functions not only must the jury be free from direct control in its verdict, but it must be free from judicial pressure, both contemporaneous and subsequent. (Authorities cited.) Both have been said to result from the submission of special questions. United States v. Spock, 416 F.2d 165, 181 (1969).

█ The Spock case had not been decided when the trial court here overruled the defendants' objections to submission of the special interrogatories. This, of course, does not change the law, but there had been no such definitive statement of the danger of such a procedure prior to Spock. We approve of this language and decision of the Court. Nevertheless, we feel that in the context of this particular case, the submission of the special interrogatories constituted harmless error.

The standard applied in making a determination that a conceded error was, nevertheless, harmless is that set forth by the Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There, the Court stated that:

> * * * before a federal constitutional error can be held harmless, the court must be able to declare a belief

that it was harmless beyond a reasonable doubt.

Because we find the evidence of guilt in this case to be overwhelming, and because during the four month trial, the jurors could reasonably be expected to have had unusual opportunity to sort out the particular acts attributed to each defendant, we are convinced beyond reasonable doubt that the submission of special interrogatories constituted harmless error.[1] Moreover, it should be noted that there existed a significant, qualitative difference between the first offense in the indictment and the remaining five. Though we do not feel this should justify the use of this procedure in a criminal case, it is apparent that the trial judge believed that unless the conspiracy had, as one of its objects, interstate prostitution, there would be a serious question as to the guilt or innocence of the female defendants. The submission of the interrogatories, in effect, aided the female defendants for they were acquitted. This, of course, is now apparent only by reason of hindsight and our statement of the trial court's purpose is not intended to sanction this procedure. We are, however, pointing out that in this particular case, the effect of the special interrogatories was helpful to some of the defendants and was harmless as to the others.

Numerous other points on appeal were raised on behalf of one or more of these defendants. We have carefully considered each point and tested it against the record and the law with respect to the matter in controversy, but we conclude that they are without merit. We are satisfied that, with the number of defendants before the court, and with the necessary number of counsel acting aggressively on behalf of their clients, the trial court afforded them all a fair trial. The charge adequately explained the issues to the jury, which showed its discriminating powers by acquitting a number of the defendants and convicting

those who were shown by evidence to have been primarily concerned with the conspiracy which the jury found to exist.

The judgments are affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing for Overton, Bowen, Tisdale, James, Schutz and Hall is denied and no member of this panel nor Judge, in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local First Circuit Rule 12) their Petition for Rehearing En Banc is denied.

---

1. It should be pointed out that although we adhere to the standard set forth in Chapman, the Supreme Court has not ruled that this is an error of constitutional dimensions. In Stein v. New York, 346 U.S. 156 at 178, 73 S.Ct. 1077, at 1089, 97 L.Ed. 1522, the Court simply noted that departure from a general verdict in a criminal case "has *sometimes* been *resisted as* an impairment of the right to trial by jury." (Emphasis added.)