**STATE of Maine**

v.

**Augustus F. HEALD.**

Supreme Judicial Court of Maine.

July 6, 1973.

David M. Cox, County Atty., Bangor, for plaintiff.

Logan & Kurr by John F. Logan, Bangor, for defendant.

Before DuFRESNE, C. J., and WEBBER, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The defendant was indicted, tried before a jury, and convicted of being an accessory before the fact to an armed robbery. He had likewise been indicted as an accessory after the fact to the same robbery and the issue arising from the treatment given this charge will be dealt with under Point II, *infra*. His timely appeal is premised on five points, none of which is meritorious, but which requires individual discussion.

I

*Motion to Dismiss the Indictment*

This motion was premised on the assumption that the grand jury found a "True Bill," (quoting from defendant's brief) "based solely and exclusively on indirect and hearsay evidence."

As bearing on this issue, the record before us contains only the following:

1) Motion for Discovery, dated October 1, 1970, requested the State, inter alia,

"to disclose . . . the names and addresses of each and every witness who testified before the Grand Jury. . . ."

2) The State responded thereon, as follows: "The witnesses who testified before the Grand Jury and their addresses are as follows:

| | |
|---|---|
| Lawrence Hall | 74 James Street, Bangor, Maine |
| Bruce Morrill | 23 East Summer Street, Bangor, Maine |
| Robert Perry | 121 Lincoln Street, Bangor, Maine." |

3) The Motion to Dismiss was dated October 3, 1970, on which had been noted, without elaboration, "Motion Denied." This ruling was preceded by a hearing during which counsel had argued their respective positions, but at which no testimony was presented.

▇ From the posture of the record before us, to grant the defendant's motion would be to rule in a vacuum. We see no reason to depart from our previously well established policy not "to inquire into the sufficiency of the evidence on which the grand jury acted." State v. Fitzherbert, 249 A.2d 760, 761 (Me.1969); State v. Perkins, 275 A.2d 586 (Me.1971). This point is without merit.

## II

*Prejudicial granting of defendant's motion to dismiss indictment charging defendant with being an accessory after the fact.*

The defendant had been indicted both as an accessory before the fact [1] and an accessory after the fact [2] to robbery. Pursuant to M.R.Crim.P., Rule 13, the indict-ments were ordered consolidated and tried together. The record is barren of any suggestion of prejudice resulting to the defendant by this order. M.R.Crim.P., Rule 14. At the conclusion of the testimony the defendant moved for a "judgment of acquittal on both indictments," and, because the State had failed to prove that the defendant was not the parent of the alleged principal felon (one of the elements of proof mandated by § 342) the motion was granted and judgment was entered for the defendant in Docket No. 3653. [3]

▇ Although it was argued that informing the jury of this ruling, and the reason therefor, was prejudicial to the defendant because the jury might somehow draw the inference that otherwise the State had proved its case, we fail to understand how a defendant can complain if he is the ultimate beneficiary of the ruling he has requested.

A full reading of the instructions of the Justice below dealing with § 341 (as will be discussed, *infra*) removes any doubt of possible prejudice resulting from informing the jury of the ruling.

## III

*Was it error to appoint as counsel for a State's witness the same attorney who was representing the defendant in another court on a separate and distinct criminal charge?*

While one Harley R. Frazier was testifying the Justice below appointed counsel to advise him on such Fifth Amendment issues as might arise. By coincidence, this same attorney represented the defendant as

---

1. 15 M.R.S.A. § 341 (Penobscot Docket No. 3652)

2. 15 M.R.S.A. § 342 (Penobscot Docket No. 3653)

3. The Justice stated to the jury: "Now, I'm going to make your task easier for you, because I am going to remove from the consideration of the jury the charge of being an accessory after the fact. And I will explain to you why I'm doing that. . . . [The Statute's nonapplicability to persons standing in the relationship of parent or child was explained.] There is no evidence that has been presented to this jury or in this Court whereby this jury could find that the defendant was not the parent of the principal offender, Robert I. Frazier."

appellate counsel in a pending but completely unrelated case.[4] On objection being registered the Justice below asked: "Do you care to make an offer of proof of what you feel may be the possible conflict of interest here?" Defense counsel responded:

"I don't know as I can make an offer of proof. I think . . . that I would like to enter a protest . . . to Mr. . . . representing this witness in a hearing in which my client is the respondent, not because today there is or may be any conflict of interest, I don't know where the ramifications in this case or the other case will lead."

The Justice had fully explained to Mr. Frazier his Fifth Amendment rights and had appointed counsel to implement these explanations as the questioning proceeded. The record discloses that no questions were asked to which answers were refused because of possible self-incrimination.

The defendant relies on Glasser v. United States (1942), 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, as support for his position. We note marked distinctions between the facts in *Glasser* and those before us. Here, the witness had already entered a guilty plea to the crime of accessory before the fact to the robbery and counsel was appointed for the limited purpose of protecting him from further self-incrimination. The defendant here was represented by independent counsel, whereas in *Glasser*, the same attorney represented a co-conspirator in a joint trial. Additionally, the Glasser Court was able to isolate instances where prejudice resulted from the co-representation, but such demonstration is not possible on this record.[5] The case is inapposite to the facts before us.

The presiding Justice found that his appointment of counsel for the witness was not prejudicial to the defendant. The counsel so appointed saw no prejudice and so stated. Counsel for the defendant could not specify any reason to support his objection and the subsequent record demonstrates nothing to support his mere conjecture.

This point of appeal is without merit.

IV

*The sentence imposed by the Court constituted cruel, unusual and unreasonable punishment.*

The defendant was sentenced to serve "not less than Ten (10) years and not more than Thirty (30) years [in the] Maine State Prison."

Robbery (17 M.R.S.A. § 3401) is punishable "by imprisonment for any term of years" and is a felony. Since the indictment charged the defendant with being an accessory before the fact to a robbery and since 15 M.R.S.A. § 341 provides that an accessory before the fact to a felony is subject to be "punished in the manner prescribed for the punishment of the principal felon," the sentence imposed was within statutory limits.

The record before us indicates a disclosure to the Justice below of facts from which he could conclude that the defendant was a "professional criminal." His announced purpose for the sentence imposed

4. Defendant, in another County, had moved to suppress certain evidence in a criminal case completely devoid of any connection with the instant case. The motion to suppress had been granted and the State had appealed. Although the attorney who was advising Mr. Frazier had not represented the defendant at the suppression hearing, he did so on the appeal.

5. "[T]he [trial] court was advised of the possibility that conflicting interests might arise which would diminish Stewart's usefulness to Glasser. Nevertheless Stewart was appointed as Kretske's counsel. Our examination of the record leads to the conclusion that Stewart's representation of Glasser was not as effective as it might have been if the appointment had not been made." 315 U.S. at 76, 62 S.Ct. at 468.

was "to protect society." We see no occasion to include herein a summary of the defendant's extensive history of involvement with the criminal law, except to say that it fully supports the conclusion reached by the sentencing Justice. With this background before us, the sentence imposed, being within statutory limits, and the penalty for robbery of "any term of years" being neither inhuman nor barbarous, does not fall within those prohibited by Article 1, § 9 of the Constitution of Maine. *See* 21 Am.Jur.2d Criminal Law §§ 611–12 & n. 13.

## V

*Requiring the jury to return "Special Findings" in the event of a "Not Guilty" verdict*

Although the record discloses no stated reason for so doing, the jury was instructed to answer two questions, but only in the event of a "Not Guilty" verdict, namely, 1) was it reached because the jury found the defendant to be "constructively present at the scene of the crime" or, 2) because the State "failed to prove the elements of the crime of accessory before the fact beyond a reasonable doubt." Defendant's counsel seasonably noted his objection by stating: "This may be highly prejudicial to the defendant and imposes a burden on this jury that is not required of it."

The issues emerging are these:

1) Was it error to submit the questionnaire to the jury?

2) If so, was the error harmless?

Article 1, § 6 of the Maine Constitution grants an accused the right "[t]o have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity."

It is basic to observe that our Constitution (independently of the Sixth Amendment to the Constitution of the United States which is, of course, binding on the

states, State v. Wheeler, 252 A.2d 455 (Me.1969)) grants to all persons accused of criminal conduct the right to trial before an impartial jury. As was said in Bennett v. State, 161 Me. 489, 493, 214 A. 2d 667, 671 (1965), "[a] potentially partial jury will not do." It is, furthermore, axiomatic that "not only must the jury be free from direct control in its verdict, but it must be free from judicial pressure, both contemporaneous and subsequent." United States v. Spock, 416 F.2d 165, 182 (1st Cir. 1969); United States v. James, 432 F.2d 303 (5th Cir. 1970).

■ We begin with the assumption, since neither judicial precedent, nor any Maine statute, nor the Maine Rules of Criminal Procedure so provides, that the use of special findings in criminal cases is not compatible with our traditional practice. Although the Maine Rules of Civil Procedure (Rule 49(a) and (b)) allow the use of special verdicts and a general verdict accompanied by answers to interrogatories in civil cases, the use of this procedure, by analogy, is not extended to criminal cases. State v. Osburn, 211 Kan. 248, 505 P.2d 742 (1973); United States v. Adcock, 447 F.2d 1337 (2nd Cir. 1971); State v. Anonymous, 6 Conn.Cir. 393, 275 A.2d 629 (1971); State v. Boggs, 87 W.Va. 738, 106 S.E. 47 (1921). We conclude that it was error to require the jury to respond to the interrogatories in the event of a "not guilty" verdict, but we hesitate to characterize the error as *necessarily* of constitutional dimension. United States v. James, *supra*.

There are jurisdictions which, by practice or by statute, allow the use of special verdicts in criminal cases. State v. Hurley, 4 Wash.App. 781, 483 P.2d 1274 (1971); Smith v. Commonwealth, 465 S. W.2d 918 (Ky.1971); People v. Rehman, 253 Cal.App.2d 119, 61 Cal.Rptr. 65, 90 n. 1 (1967); State v. Ellis, 262 N.C. 446, 137 S.E.2d 840 (1964); State v. Bock, 80 Idaho 296, 328 P.2d 1065 (Idaho 1958). We have found no decisions in these jurisdic-

tions in which the basic constitutionality of this procedure has been challenged. On the contrary, the case law seems to assume otherwise.[6]

There are other jurisdictions which frown on the practice, but apparently more for reasons of policy than for reasons of unconstitutionality. Brown v. State, 475 S.W.2d 938 (Tex.Cr.App., 1971); State v. Anonymous, *supra*; United States v. Adcock (2d Cir.) *supra*; Gray v. United States, 174 F.2d 919 (8th Cir. 1949); People v. Tessmer, 171 Mich. 522, 137 N.W. 214 (1912).

Although United States v. Spock, *supra,* has been strongly urged as flat support for the proposition that to require a jury to make special findings in addition to a general verdict is violative of the Sixth Amendment right to trial by jury, this argument is not without doubt, either from a literal reading of the case, or from its interpretation by at least one other Federal Circuit. United States v. James, 432 F.2d 303 (5th Cir. 1970), in holding that the use of special interrogatories "in the context of this particular case" was harmless error, commented in a footnote:

"It should be pointed out that although we adhere to the standard set forth in Chapman [Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], the Supreme Court has not ruled that this is an error of constitutional dimensions. In Stein v. New York, 346 U.S. 156 at 178, 73 S.Ct. 1077 at 1089, 97 L.Ed. 1522, the Court simply noted that departure from a general verdict in a criminal case 'has *sometimes* been *resisted as* an impairment of the

right to trial by jury.' (Emphasis added.)"

Id. at 308 n. 1.

Reverting to United States v. Spock, we note that the reference to the "constitutional guarantees of due process and trial by jury," was used in the context of affording a criminal defendant the "full protection of a jury unfettered, directly or indirectly," the Court pointing out that "[b]y a progression of questions each of which seems to require an answer unfavorable to the defendant, a reluctant juror may be led to vote for a conviction which, in the large, he would have resisted." The Court concluded "[t]his was not a case to be subjected to special limitations *not sanctioned by general practice.*" (Emphasis added.)

We conclude that unless the interrogatories were of the type designed "to lead the jurors down the guilty trail" and that the jury verdict becomes but a "hollow affirmation" from jurors catechized by the questions they have been compelled to answer, the constitutional concepts of due process and trial by jury are not violated and courts are free to examine the record to determine whether the error was otherwise harmless. Commonwealth v. Beneficial Finance Co., 275 N.E.2d 33, 97 (Mass. 1971).

It should be noted that, unlike the ten questions in *Spock*, the two interrogatories here in issue required the jury to reveal the *legal basis* upon which their "not guilty" verdict was premised and required an answer only if such was the verdict. In *Spock* the ten questions were to be answered regardless of the general verdict. In terms of "fettering" or coercing the

---

6. Under the holding in State v. Ferris, 249 A.2d 523 (Me.1969), Maine juries are now required, *in effect*, to make a special finding in assault and battery cases where aggravation is alleged since the element of aggravation is no part of the substantive offense, reaching only the question of punishment. This result was mandated for the constitutional reasons enunciated in Duncan, Appellant v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), applying to the states under the Fourteenth Amendment the Sixth Amendment jury trial provisions.

jury, the two questions before us fall far short of the catechistic tendency of those in *Spock*, and more nearly resemble the six "special findings" utilized in *James* to determine which of the six counts in that indictment each defendant had conspired to commit.

Citation of authority is hardly necessary for the general proposition that a trial error not of constitutional dimension does not necessarily result in reversal, and will so result only if the error "affect[s] substantial rights." [7] Moreover, even where constitutional error is asserted and established, under the Chapman v. California test [8] reversal is not automatic. State v. Gervais, 303 A.2d 459 (Me.1973); State v. McKeough, 300 A.2d 755 (Me.1973); State v. Tibbetts, 299 A.2d 883 (Me.1973); State v. LeBlanc, 290 A.2d 193 (Me.1972); State v. Boyd, 294 A.2d 459 (Me.1972).

We recognize that a different standard is applied when reviewing ordinary trial errors than is used when dealing with errors reaching constitutional dimension. There is a significant distinction between the burden on an excepting party to "show affirmatively that he is prejudiced," State v. Rist, 130 Me. 163, 166, 154 A. 178, 179 (1931); or to show "substantial prejudice," State v. Cloutier, 134 Me. 269, 278, 186 A. 604, 609 (1936); or that "the exclusion was prejudicial," State v. Ernst, 150 Me. 449, 458, 114 A.2d 369, 374 (1955), and the *Chapman* test "requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. at 828.

■ While we have held that the submission of the two interrogatories was error, we do not feel compelled to decide whether it was of constitutional dimension

since, by applying the *Chapman* test we are satisfied beyond a reasonable doubt, on the facts in the record conjoined with the instructions given the jury, that the error was harmless. A fortiori, the application of the less rigorous test would lead to the same conclusion.

Supported by this background, we first examine the facts.

The scene of the robbery was a supermarket in the city of Brewer. The cashier (Bruce Morrill) described vividly the acts of two men who, at gun point, demanded of him (and received) the contents of the cash register, which in his judgment totaled between $388. and $400. Mr. Morrill positively identified Robert I. Frazier and John Hanson as the men who committed the robbery. His testimony fully supports the description of the act given the jury by Robert I. Frazier, as follows:

"A  I pulled the gun out and told him to fill the bag up with money.

Q  Which is the man behind the register?

A  Right.

Q  And did he put the money in the bag?

A  Yes."

John Hanson, who was with Frazier, gave similar testimony and they both agreed that the amount of money taken was $385. Each, at the time of the defendant's trial, had pleaded guilty to indictments charging them with this particular robbery, but neither of them had yet been sentenced, which was known by the jury.

Harley R. Frazier (brother of Robert) was the operator of the "get-away car" which he described as being parked in a

---

7. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." M.R.Crim. P., Rule 52(a).

8. "[T]hat before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed. 2d 705.

near-by street *out of sight* of the supermarket. His description of the location in which the car was parked was verified by a Brewer police officer who furnished the jury with a map of the area and with measurements from which the jury could test the accuracy of this testimony and conclude that the vehicle was not visible from the store. There was no testimony to the contrary.

Both Fraziers, as well as Hanson, gave consistent testimony descriptive of the defendant's pre-robbery activity and advice. They agreed that the defendant directed them to Brewer, pointed out the location of the supermarket, and furnished the gun and the bag in which to hold the money. Robert Frazier and Hanson testified that Mr. Heald, after giving them the gun and the bag, was in the car when they left to consummate the robbery and they both agreed that he was still in the car after they had returned from the store. Harley R. Frazier testified that Mr. Heald remained in the car during the entire time that his brother and Hanson were absent stating "[h]e just sat there drinking . . . ." His testimony was undisputed that the engine in the car was not running while it was parked, that there was no agreement that those remaining in the car would serve as a look-out or that any prearranged signals were to be given in the event that the police were seen in the area. Following the robbery they drove to Bangor, parked the car and divided the money so that the two Fraziers and Hanson each received $100. and the defendant received $85.

There was no dispute among the three witnesses that a young lady was with them and the defendant during the entire course of the evening and was in the automobile during the time the robbery was being committed. She did not testify and the jury was given no explanation therefor by either the State or the defendant.

The jury knew that Harley R. Frazier at the time of the trial had been previously convicted of being an accessory before the fact to this particular robbery but had not been sentenced. The jury was also aware of facts developed in cross-examination of the State's witnesses directed at their credibility. For example, the amount of intoxicating liquor that those in the car had been consuming was described. Likewise, the fact that Harley R. Frazier had made inconsistent statements involving the defendant's complicity was called to the jury's attention. In short, the defense carefully recorded all facts which might cast any doubt on the credibility of either the two Fraziers or Hanson.

If the jury had reached the conclusion that the defendant was not guilty, it is difficult to imagine upon what basis such a result could have been justified. Beyond pure conjecture there was no evidence upon which the jury could have concluded that Mr. Heald was either constructively or actually present during the robbery. The fact of the robbery itelf cannot be disputed, and there was no evidence to contradict the statements of the two participants and the confessed accessory that Mr. Heald directed them to the scene with knowledge of their purpose and furnished them with the tools with which to commit the crime.

Even if it is assumed that the two Fraziers and Hanson were less than credible witnesses, there was independent evidence which verified their testimony. Certainly Bruce Morrill's testimony was in total agreement with that of Robert I. Frazier and John Hanson. His testimony also supports Harley R. Frazier's description of the division of the money because the amount Mr. Morrill felt was taken tallies within a very few dollars with that which Mr. Frazier described as being divided among the four men. Furthermore, Harley Frazier's testimony that the store could not be seen from where the car was parked found complete support in the testimony of the Brewer police officer. The jury would be entitled to consider that if the defendant seriously challenged the accuracy of

the testimony of the two Fraziers and Hanson as to where he was and what he was doing during the progress of the robbery, he could have utilized the young lady as a witness.

Our conclusion is that the facts produced by the State established the guilt of the defendant beyond a reasonable doubt and that no rational jury could have concluded otherwise.

We next must inquire whether the "special findings," in the context of the Justice's charge in its entirety, had a coercive effect upon the jury.

The Justice below gave full, complete and accurate preliminary instructions to the jury. His charge was lengthy and thoroughly covered the concepts of the presumption of innocence and the State's burden to prove guilt beyond a reasonable doubt. He was meticulously careful to delineate the distinction between the jury's obligation to determine what the facts were and his obligation to explain the law to them.

After the general instructions of the Justice were completed, the jury was granted a recess and when it returned its attention was directed to the legal issues involved in the proof of the crime charged by the indictment. The explanation of the essential elements of being an accessory before the fact was clear as was the delineation of the elements of robbery. The Justice spent an appreciable time distinguishing between one who is a principal in a criminal undertaking and one who is an accessory thereto and pointed out on several occasions to the jury:

> "But a principal in the commission of a felony and being an accessory to the commission of the felony are 2 separate, distinct offenses, and if you are a principal in the commission of an offense, you cannot be convicted as an accessory. And if you are an accessory in the commission of a felony, you cannot be convicted as a principal."

His instruction to the jury on the concept of "constructive presence," and its bearing on the distinction between the status of a principal and an accessory was simplistically clear.

After stating "if you find that he [defendant] was [actually present at the scene of the crime], then your verdict must be not guilty of being an accessory before the fact," the Justice continued his instruction, "you must next determine whether or not he was constructively present, because . . . a person who is constructively present at the scene of the offense is guilty as a principal." Next ensued a complete and accurate definition of the term "constructive presence," concluding in this language:

> "[I]f you find that the defendant was in fact, and this is a finding for the jury, and I have no interest in suggesting to you that he was or was not, if you find that he was there and that he was actually present at the scene of the crime, that is, inside the store as a principal, then you will find him not guilty of this offense. If you find that he was there, but although not inside the store he was constructively present at the scene of the crime, as I have defined it to you, then he is a principal and your finding must be not guilty because he cannot be convicted of an accessory if in fact he is a principal. On the other hand, if you find that he was there and that he had done those things that I have indicated to you an accessory must do and that he was neither actually present nor constructively present, then he is an accessory before the fact, and if you are satisfied as to all of the elements and satisfied beyond a reasonable doubt, then your verdict in that case must be guilty of the offense of being an accessory before the fact to the crime of robbery."

We have included the exact language of the Justice below as a basis for our conclusion that the interrogatories submitted to

the jury could not be considered coercive from either a legal or factual point of view.

Factually, the record indicates that the jury began its deliberation at 2:05 p. m. and returned at 3:45 p. m., asking for further instructions. After some colloquy with the Court it developed that the jury wished once again to have the Court distinguish between "one who is a principal and one who is an accessory." The Justice complied with this request in clear and understandable language, and it is inconceivable that the jury was left with any doubt as to the legal distinction between the two concepts. In any event, eight minutes after receiving the additional instructions the jury returned with a verdict of guilty. As we view the record, the request for additional instructions conjoined with the prior instructions, clearly indicates factually that the jury felt no coercion from the two interrogatories which they had been asked to answer.

Neither the State nor the appellant objected to the language of the Justice below, which we have quoted. Therefore, its literal accuracy is not necessarily before us except in the sense that if the language used was an incorrect legal statement prejudicial to the appellant, we would be compelled to conclude that it was coercive as a matter of law because it would furnish a false legal premise upon which the jury might predicate its answer.

Our quotations from the instructions of the Justice are not intended to approve this language as a correct generalized legal concept applicable to all situations involving the contrasting positions of accessories and principals in the criminal law. On the record before us, *the appellant had only been indicted as an accessory before the fact* and, therefore, the issue of whether a criminal defendant might be convicted on appropriate facts and under proper indictments of being both an accessory before the fact and a principal is not before us. In the context of the appellant's defense

(which undoubtedly prompted the Justice below to use the quoted language), the only issue was whether having been indicted as an accessory he could be convicted thereof when (as the appellant argued) the only evidence established his guilt as a principal.

■ Maine has interpreted our accessory before the fact statute (15 M.R.S.A. § 341) as creating a clear distinction between guilt as a principal and guilt as an accessory, calling the latter a substantive offense. State v. Ricker, 29 Me. 84 (1884); State v. Saba, 139 Me. 153, 27 A.2d 813 (1942). This position is consistent with that taken by Massachusetts, from whose statute Section 341 was modelled. Commonwealth v. Mannos, 311 Mass. 94, 40 N.E.2d 291 (1942). A fortiori, a felon cannot be convicted as a principal on an indictment charging him as an accessory before the fact, nor as an accessory before the fact on an indictment charging him as a principal. State v. Boles, 151 W.Va. 1033, 159 S.E.2d 36 (1967).

As between the common law concept of a principal in the second degree and an accessory before the fact, and because the criminal code does not recognize this distinction as substantive, the opposite result was reached in Pennsylvania. Commonwealth v. Parmer, 364 Pa. 11, 70 A.2d 296 (1950); Commonwealth v. Miller, 187 Pa. Super. 4, 144 A.2d 252 (1958).

■ We do not question the generalized proposition that "a person may be an accessory before the fact and also a principal in the commission of a crime." 22 C.J.S. Criminal Law § 90 at 269; Pike v. State, 495 P.2d 1188 (Wyo.1972); Commonwealth v. Mannos, *supra*. The formal recognition of this rule for the first time in Maine is a realistic recognition of the latitude which the prosecution should have in determining whether to charge a criminal defendant with being an accessory before the fact or with being a principal. For example, should the prosecution determine to

utilize Section 341 in a criminal proceeding, it is not necessarily exposed to the defense that at some point in time the defendant did certain additional acts which would classify him as a principal.

On the record before us the indictment charges the appellant with being an accessory before the fact and if the evidence is sufficient to warrant the jury's concluding beyond a reasonable doubt that the appellant had counselled or otherwise procured the commission of the offense and thus established the elements of the crime of accessory before the fact, it would not be a defense to the indictment merely to show that additionally the defendant had participated in the offense as a principal. Otherwise stated, evidence of active participation in the commission of a felony does not necessarily preclude conviction as an accessory before the fact thereto, assuming the jury is satisfied beyond a reasonable doubt that the elements of this substantive offense have been established.[9]

In light of the foregoing discussion, since the Justice propounded a legal concept which was more favorable to the appellant than the law required, it is obvious that this language could not be construed as legally coercive.

In summary, by our analysis of the facts conjoined with the legal posture of the case as it was left with the jury by the Justice below, we are satisfied beyond a reasonable doubt that the presence of the two questions with the jurors and the direction to answer them should their verdict be not guilty played no part in the guilty verdict which they ultimately announced. While we disapprove of special findings in criminal cases absent some compelling reason therefore,[10] "[n]evertheless, we feel that in the context of this

particular case, the submission of the special interrogatories constituted harmless error." United States v. James, 432 F. 2d at 307.

The entry is:

Appeal denied.

All Justices concurring.

WEATHERBEE, J., did not sit.

---

9. It is unnecessary for us to decide here whether a criminal defendant indicted and tried both as an accessory before the fact and as a principal can be convicted of both substantive offenses. See State v. Allen, 292 A.2d 167 (Me.1972).

10. See United States v. Spock, 416 F.2d 165, 182 n. 41.